**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VENDETTA G., | |
| Claimant, | |
| | No. 21 C 1097 |
| v. | |
| | Magistrate Judge Jeffrey T. Gilbert |
| MARTIN O'MALLEY, | |
| Commissioner of Social Security, | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Vendetta G.[1] ("Claimant") seeks review of the final decision of Respondent Martin O'Malley,[2] Commissioner of Social Security ("Commissioner"), denying her application for supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 5]. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c). Claimant filed a Motion for Summary Judgment [ECF No. 16] and a Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 17], and the Commissioner filed a Motion for Summary Judgment. [ECF No. 22]. For

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons discussed below, Claimant's Motion for Summary Judgment [ECF No. 16] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 22] is granted.

## PROCEDURAL HISTORY

On January 31, 2015, Claimant filed an application for supplemental security income, alleging a disability beginning May 1, 2013. (R.19). The claim was denied initially on July 30, 2015, and on reconsideration on November 18, 2015. (R.19). Claimant requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on June 27, 2017 before ALJ Luke Woltering. (R.19). Claimant, who was represented counsel, appeared and testified at the hearing. Thomas Dunleavy, an impartial vocational expert, also appeared and testified at the hearing. (R.13). ALJ Woltering issued an unfavorable decision on November 28, 2017, finding Claimant not disabled under section 1614(a)(3)(A) of the Social Security Act. (R.19-28).

Claimant timely submitted a request to the Appeals Council to review the ALJ's decision, but the Appeals Council denied that request on November 9, 2018, causing the ALJ's decision to constitute the final decision of the Commissioner. (R.1-6). Claimant then filed a lawsuit in the district court seeking review of the Commissioner's decision. *See Vendetta G. v. Saul*, Case No. 19 C 262. The parties agreed to a reversal with remand of that case to the agency pursuant to the fourth sentence of 42 U.S.C. § 405(g), which provides that this "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This Court granted the parties' request for an agreed remand and returned the case to the Social Security Administration for further proceedings. *See Glasse v. Saul*, Case No. 19 C 262 (N.D. Ill. Nov. 27, 2019), Order [ECF No. 27] (granting remand). On remand, the case was returned to ALJ Woltering with instructions to consider new evidence regarding Claimant's alleged metal impairments, to give Claimant an opportunity to submit additional evidence and have another hearing, and to issue a new decision. *Id.*

In light of the Covid-19 pandemic, ALJ Woltering held a second hearing via telephone on October 9, 2020. (R.1124). Claimant was represented by counsel and testified by telephone. An impartial medical expert, Michael A. Lace, Psy.D., and an impartial vocational expert, Millie Droste, also testified by telephone at the hearing. (R.1124). After the hearing, ALJ Woltering issued a second unfavorable decision on October 28, 2020, again finding Claimant not disabled under section 1614(a)(3)(A) of the Social Security Act. (R.1124-1140).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since January 31, 2015, the date she filed her application. (R.1127). At step two, the ALJ found Claimant had the following severe impairments: obesity, right foot osteoarthritis, lumbar radiculopathy, hypertension, diabetes mellitus with neuropathy in the feet, and major depressive disorder. (R.1127).

At step three, the ALJ determined Claimant did not have any physical or mental impairment or combination of impairments that met or medically equaled the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (R.1128-30). The ALJ concluded that the severity of Claimant's physical impairments, considered singly and in combination, did not meet or medically equal the criteria of any listing. (R.1128). The ALJ then discussed Claimant's mental impairments and concluded that the severity of Claimant's mental impairments also did not meet or medically equal the criteria of any listing. (R.1129). In his analysis, the ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders, which are known as the "paragraph B" criteria. Specifically, the ALJ found Claimant had mild limitations in (1) understanding, remembering, or applying information, (2) interacting with others, and (3) adapting or managing oneself and moderate limitations in (4) concentrating, persisting, or maintaining pace. (R.1129). With mild limitations in three areas of functioning and moderate limitations in the fourth area of functioning, the ALJ found that paragraph B criteria were not satisfied. (R.1130). The ALJ also considered whether the "paragraph C" criteria were satisfied and concluded that the record evidence did not document the existence of any of the paragraph C criteria. (R.1130).

The ALJ then found Claimant had the residual functional capacity ("RFC")[3] to perform sedentary work as defined in 20 CFR 416.967(a) with the following limitations: "The claimant cannot climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant cannot work around hazards such as unprotected heights and exposed moving mechanical parts. The claimant cannot work at a production-rate pace, such as assembly line work or other work requiring rigid quotas." (R.1130). At step four, the ALJ found that Claimant was capable of performing her past work as a court clerk. (R.1139-1140).

Based on this analysis, the ALJ issued an unfavorable decision October 28, 2020, finding that Claimant has not been under a disability as defined in the Social Security Act since January 31, 2015, the date Claimant filed her application. (R.1124-1140). Thereafter, Claimant filed this lawsuit seeking judicial review, and this Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

When a claimant files an application for supplemental security income, she bears the burden under the Social Security Act to bring forth evidence that proves her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

5

individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005); 20 C.F.R. § 416.920)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standard in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant argues the ALJ's decision cannot stand because: (1) the ALJ erred in concluding Claimant could perform her past work as a court clerk; (2) the ALJ erred in evaluating Claimant's RFC; (3) the ALJ did not properly evaluate Claimant's subjective symptoms and complaints; and (4) the denial of disability insurance benefits for Claimant is constitutionally defective. The Court addresses the arguments below.

## A. The RFC Is Supported by Substantial Evidence

Because Claimant's ability to return to her past relevant work comes into play only if the ALJ's RFC determination is supported by substantial evidence, the Court begins with Claimant's second argument that the ALJ erred in evaluating Claimant's RFC when relying of the opinion of the medical expert Dr. Lace and discounting the opinion of Claimant's treating physician Dr. Butt.

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

At step two of the evaluation process, the ALJ found that Claimant had severe physical and mental impairments, including obesity, right foot osteoarthritis, lumbar radiculopathy, hypertension, diabetes mellitus with neuropathy in the feet, and major depressive disorder. (R.1127). Taking these impairments into consideration, the ALJ concluded Claimant could perform sedentary work with additional

8

limitations. (R.1130). Specifically, the ALJ determined that "[t]he claimant cannot climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant cannot work around hazards such as unprotected heights and exposed moving mechanical parts. The claimant cannot work at a production-rate pace, such as assembly line work or other work requiring rigid quotas." (R.1130). The ALJ based his determination, in part, on the testimony and opinion of Dr. Lace, the impartial medical expert who testified during Claimant's hearing. (R.1130, 1138). Claimant, however, argues that the ALJ erred in relying on Dr. Lace's assessment of Claimant's abilities and should have given more weight to the opinion of Dr. Butt, Claimant's treating physician. Claimant's Brief [ECF No. 17], at 9.

The Social Security Regulations require that an ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports the conclusion." SSR 96-8p. An ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Although the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, he must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

As required by the regulations, the ALJ here considered Claimant's longitudinal medical records in evaluating her physical and mental work-related abilities and limitations. (R.1132-1139). Claimant does not challenge the ALJ's

findings regarding her physical abilities and limitations and only focuses on the ALJ's findings regarding her mental capabilities and limitations. The Court, therefore, will focus only the mental portion of the RFC. The ALJ began his review of Claimant's mental limitations with a June 2015 psychological consultative examination during which Claimant reported severe depression with sad mood, low energy, poor motivation, social isolation, poor hygiene and memory, and difficulty making appointments for the previous six years in June 2015. (R.1134). Around the same time, Claimant had an initial appointment with her treating psychologist, Dr. Zushan Butt, Ph.D., at which she reported serve depression for the last six years. (R.1134).

In contrast to Claimant's self-reports of severe depression, the ALJ noted that, when Claimant first started treatment, Dr. Butt "endorsed only 'moderate symptoms of anxiety/depression.'" (R.1134). The ALJ explained that after examination Dr. Butt characterized Claimant's affect as "appropriate" with a "slightly anxious mood." (R.1134). The ALJ also pointed out that a consultative psychological examination conducted around the same time in June 2015 was mostly normal. (R.1134). Specifically, Claimant was able to: (1) recite six digits forwards and three backwards; (2) recall four out of five words; (3) aware of current events; (4) correctly perform serial seven subtractions and single-digit multiplication and addition problems; and (5) remember her route to the examination office, the names of her parents, the number of weeks in a year, how many nickels made $1.15, and the name of the president and his predecessor. *Id.*

The ALJ acknowledged that even though Claimant failed to complete some behavioral homework assignments, the records reflected that Claimant's mood continued to improve and her reported symptoms of anxiety and depression had decreased, and by October 2015, and Dr. Butt indicated her anxiety and depression were in remission and that Claimant "was coping reasonably well with multiple stressors." (R.1134-1135) The ALJ acknowledged that Claimant continued to receive prescriptions for Bupropion and Trazodone for depression and insomnia. (R.1135). The ALJ also acknowledged that although Claimant reported increased depression for six months due to an alleged fear of leaving her home in July 2018, she still was able to take a bus to Mississippi to visit her mother for several weeks despite her reports of an inability to leave her house. (R.1135). The ALJ also discussed medical findings that that Claimant maintained appropriate affect and mood, as well as normal judgment and insight on objective mental status examinations, despite her continued complaints of ongoing depression and anxiety without treatment in 2020. (R.1135).

Claimant, however, contends the ALJ selectively relied on limited evidence in the record and ignored other relevant evidence. Claimant's Brief [ECF No.17], at 9-10. The law is clear, however that an ALJ is not required to address every piece of evidence or testimony presented. *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("True, the ALJ's summary does not mention every detail. But it need not."). The bottom line is that the ALJ gave several supported reasons for discounting Dr. Butt's opinion and relying on Dr. Lace's evaluation.

11

Specifically, the ALJ found Dr. Butt's opinion that Claimant had a marked limitation in concentration, persistence, and pace as of December 2016 is inconsistent with Claimant's performance on the mental status portion of the consultative examination conducted in 2015. (R.1137). The ALJ also explained that Dr. Butt's December 2016 opinion is undermined by the fact that it included a statement that Claimant had repeated episodes of decompensation of extended duration, which is not supported by the records. With regard to Dr. Butt's January 2018 opinion, the ALJ explained that Dr. Butt's treatment notes contradict his opinion. For these reasons, the ALJ concluded that Dr. Butt's opinions "are internally contradictory" and not supported by his treatment notes. (R.1138). As to Dr. Lace's opinion which the ALJ assigned great weight, the ALJ explained that his opinion is consistent with (1) Claimant's performance on the mental status portion of the consultative exam, (2) Claimant's documented improvement with her depression during treatment in 2015, and (3) objective findings with improvement during her limited treatment in 2016 and after.

In the Court's view, this is a reasonable assessment of medical opinions based on Claimant's treatment records. The ALJ sufficiently explained his analysis and the limitations he included to accommodate for Claimant's needs, and it is supported substantial evidence. Essentially, Claimant is asking this Court to re-weigh the opinion evidence and give greater weight to Dr. Butt's opinion than did the ALJ. That, however, is not the Court's role. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (reviewing courts do not reweigh evidence). For all these reasons, remand is not required.

12

**B. The ALJ's Subjective Symptom Analysis Is Supported by Substantial Evidence**

Claimant next argues that the ALJ failed to properly assess her subjective symptoms. Claimant's Brief [ECF No. 17], at 10-12. The Court again disagrees with Claimant. Subjective statements by a claimant as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. 42 U.S.C. § 423(d)(5)(A). The regulations instruct that an ALJ consider a number of factors, including: (1) relevant medical evidence, including intensity and limiting effects of symptoms; (2) treatment and efficacy; (3) return to gainful activity; (4) work during disability period; (5) daily activities; and (6) statements inconsistent with the record. 20 C.F.R. § 416.929(c). An ALJ, however, need not discuss every detail in the record as it relates to every factor, and summaries of medical evidence, while definitionally "partial and selective," are appropriate. *Gedatus*, 994 F.3d at 901, 903. Importantly, the Seventh Circuit has made clear that an ALJ's findings regarding a claimant's subjective complaints are entitled to great deference. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) ("We give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'"). As long as an ALJ provides specific reasons supported by the record, this Court cannot overturn a credibility determination unless it is patently wrong. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

In the Court's view, the ALJ's decision to not fully credit Claimant's subjective complaints is supported by substantial evidence. The Seventh Circuit has recognized that a claimant's "subjective complaints need not be accepted insofar as they clash

13

with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). Here, the ALJ compared Claimant's subjective statements with her treatment records and noted that Claimant's alleged complaints were not entirely consistent with the medical evidence and other evidence in the record (R.1131). Claimant testified that she suffered from worsening and disabling depression (which the ALJ acknowledged), but the ALJ also noted that the treatment notes in the record showed that Claimant's depression and anxiety were in remission and that she generally had unremarkable mental status examination findings including after long gaps in treatment. (R.1134-1135). The ALJ also highlighted that Claimant's depression and anxiety were in remission with consistent treatment despite Claimant not completely adhering to her behavioral modification assignments (R.1134). The ALJ also noted there was no objective medical evidence showing a significant decline in Claimant's mental status or ability to function despite her subjective complaints (R.1135).

In the Court's view, the ALJ also appropriately considered Claimant's reported daily activities. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (holding that "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated"). The ALJ acknowledged Claimant's reported lack of motivation to complete daily tasks and that she claimed she did not shower everyday due to depression and tiredness. (R.1130). In contrast, however, the ALJ also noted the record showed that Claimant managed her own personal care, prepared simple

meals, paid bills, counted change, managed bank accounts, and took public transit (R.1130). The ALJ also pointed out that Claimant traveled by bus to visit her mother in Mississippi. (R.1135).

Claimant argues it was not reasonable for the ALJ to rely on the fact that she traveled to Mississippi as she went to stay with her mother because of her housing issues. Claimant's Brief [ECF No. 17], at 14. The Court disagrees. The fact that the ALJ did not say Claimant traveled to Mississippi because she was experiencing housing issues does not render the ALJ's activities of daily living analysis patently wrong. It is not disputed that Claimant was able to travel, and in addition, "an ALJ need not discuss every detail related to every factor" when analyzing a claimant's daily activities. *Gedatus*, 994 F.3d at 903. The Seventh Circuit has held that an ALJ's failure to mention "a few limitations" on some of a claimant's activities, "if wrong at all, [is] not so 'patently wrong' as to warrant reversal." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). It is permissible for an ALJ to generally consider how a claimant's "ability to travel would undermine [her] credibility." *Ortega v. Berryhill*, 2018 WL 4144636, at *5 (N.D. Ill. Aug. 30, 2018).

Courts have upheld an ALJ's subjective symptom analysis supported by a single valid reason. *See Kittelson v. Astrue*, 362 F. App'x 553, 557 (7th Cir. 2010). Here, in contrast to Claimant's argument that the ALJ relied solely on the objective evidence, the ALJ provided several reasons for discounting Claimant's subjective statements—generally unremarkable mental status examination findings, good response to treatment and medication, and documented daily activities.

15

For the reasons discussed above and mindful of the deference owed to the ALJ's decision on appeal, this Court cannot, and will not, substitute its judgment for that of the ALJ's by reweighing the evidence. In the Court's view, the ALJ sufficiently explained his analysis of Claimant's subjective symptoms and complaints, and substantial evidence supports the ALJ's decision. Remand, therefore, is not required.

### C. The ALJ's Finding that Claimant Could Perform Past Relevant Work Is Supported by Substantial Evidence

Claimant argues the ALJ erred in concluding Claimant could perform her past relevant work as a court clerk. In making that determination, the ALJ concluded, among other thigs, that a limitation to "no production-rate pace" work would permit Claimant to perform that job. (R.1130, 1140). Claimant, however, contends there is a conflict between how ALJ defined "production-rate pace" and how the VE characterized the requirements for the court clerk position. Claimant's Brief [ECF No. 17], at 6-7. The Court disagrees with Claimant.[4]

When making a determination at step four, "[p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982). At step four, "the burden of proof rests on the claimant to establish that she is not capable of performing her past work." *Sevec v. Kijakazi*, 59 F.4th 293, 300 n. 35 (7th Cir. 2023).

---

[4] In the Commissioner's Motion and response to Claimant's arguments, the Commissioner says substantial evidence supported the ALJ's conclusion that "there were a significant number of jobs available at step five." [ECF No. 23], at 23. The Court, however, noted that the ALJ did not make any finding at step five, but rather determined at step four that Claimant could perform her past relevant work. (R.1139).

16

At the hearing, the ALJ asked the VE about a hypothetical involving no work at a production-rate pace, such as assembly line work or other work requiring rigid quotas, among other limitations. (R.1176). During the colloquy between the ALJ and the VE, the ALJ clarified the limitation for no production-pace work to include "assembly line work or other work requiring rigid quotas" and jobs that "require a person to be on task" and have "the end of day quota job." (R.1176-77). In response, the VE initially stated that if the hypothetical individual "was taking call after call," moving around quickly, and "had a lot of files to get done," then that individual could not perform Claimant's past work. (R.1177). However, because of some confusion between Claimant's past jobs as a general clerk and a court clerk, the ALJ directly asked Claimant to describe the duties she performed as a court clerk. (R 1180-81). Claimant testified that when performing the court clerk job, she was required to answer telephone calls regarding payments, check court dates, manage mailing lists of payments, look at microfilm, and handle the filing of motions at the counter, and she emphasized that the telephone was "ringing constantly." (R 1180-81). In response to this testimony, the VE stated that the court clerk position did not involve a quota because there was no assembly line requirement as compared to Claimant's other previous past relevant work as a general clerk, "where she had a certain number of files to get done." (R.1181). The VE then specifically added that the court clerk position did not involve a production rate because it did not have rigid quotas. (R.1181).

Claimant contends that it was error for the ALJ to not consider how he initially described a "production rate pace" to include a person to be "on task." Claimant's Brief [ECF No. 17], at 7. Claimant argues that the ALJ's hypothetical and VE testimony are in conflict which the ALJ failed to resolve. *See Diaz v. Chater*, 55 F.3d 300, 306, n.2 (7th Cir. 1995), citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1995) (ALJs must resolve conflicts in the evidence). Claimant argues that the VE's testimony that the court clerk position did not involve a quota, assembly line, or production rate is not consistent with the way the ALJ defined those terms because the ALJ characterized the limitation to no "rigid quotas" to mean a job where the person had to be "on task." (R.1176). The Court disagrees with this characterization and disagrees there is a conflict. Notably, Claimant leaves out the relevant portion of the ALJ's description in which he describes an individual who is required "to be on task" also has an "end of day quota." (R.1176).

In the Court's view, a fair reading of the exchange between the ALJ and VE did not need clarification. (R.1176). During the hearing, the ALJ and VE sought clarification from Claimant on her job description, and based on Claimant's testimony, the VE reasonably concluded that the court clerk position did not involve a quota, assembly line, or production rate. (R.1181). The law is clear that "[a] claimant is not disabled if [she] can do his past relevant work either in the manner [she] performed it before the impairment *or* in the manner it is generally performed in the national economy." *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019).

Based on Claimant's testimony and the evidence in the record regarding Claimant's work background, the VE determined that Claimant could perform her past work as a court clerk. In the Court's view, the ALJ reasonably relied on the VE's testimony and did not err in concluding that Claimant could perform her past relevant work as a court clerk on this record. Therefore, remand is not required.

**D. The Court Is Not Persuaded By Claimant's Constitutional Argument**

Finally, Claimant also seeks remand based on a constitutional separation of powers challenge. Claimant's Brief [ECF No. 17], at 12-13. Claimant argues the statutory removal protection for a Commissioner of Social Security, which is found in 42 U.S.C. § 902(a)(3), is a constitutionally defective delegation of power because the Commissioner is allowed to serve for a longer term than the President and cannot be removed except for cause. In Claimant's view, since the Commissioner's statutory authority is defective, the ALJ and the Appeals Council operating under the Commissioner exercised power they did not lawfully possess, compelling remand under Supreme Court precedent in *Seila Law LLC v. Consumer Fin. Protection Bureau*, 140 S. Ct. 2183 (2020). The Court disagrees with Claimant's argument.

The Commissioner admits that 42 U.S.C. § 902(a)(3) violates the separation of powers "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." Commissioner's Brief [ECF No. 24], at 2-3 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)). But a claimant seeking relief on that basis must show that the restriction actually caused

19

her harm in "some direct and identifiable way." *Cheryl T. v. Kijakazi,* 2022 WL 3716080, at *4 (N.D. Ill. 2022). In this case, Claimant does not identify any harm she suffered other than the denial of her request for disability benefits and "the mere fact of a disappointing outcome on [an] application for Social Security benefits will not suffice." *Michelle S. v. Kijakazi*, 2022 WL 4551967, at *6 (N.D. Ill. Sept. 29, 2022) (citation and internal quotations omitted). A claimant's "failure to show that any injury resulted from this allegedly invalid delegation of authority makes this argument a nonstarter." *Id.*

In sum, the Court agrees with the overwhelming weight of authority in this circuit and nationwide and finds that Claimant's constitutional argument do not have merit, and therefore, remand is not warranted on this issue. *See Michelle S.*, 2022 WL 4551967, at *7; *Cheryl T.,* 2022 WL 3716080, at *4; *Lizette C. v. Kijakazi,* 2022 WL 3369274, at *2 (N.D. Ill. 2022); *Jason M. v. Kijakazi,* 2022 WL 2071096, at *12 (S.D. Ind. 2022); *Linnear v. Kijakazi,* 2022 WL 1493563, at *7 (S.D. Ga. 2022) (noting that the court "has not found, a single instance of a District Judge reversing a Social Security decision on the basis of § 902(a)(3)'s unconstitutionality"); *Green v. Kijakazi,* 2022 WL 1644936, at *25 (E.D. Wis. 2022); *Ghakarhi B. v. Commissioner*, 2022 WL 4397529, at *7 (N.D. Ga. Sept. 22, 2022) (collecting cases).

## CONCLUSION

Accordingly, for all of the reasons set forth above, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 17] is

denied, and the Commissioner's Motion for Summary Judgment. [ECF No. 22] is granted.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 21, 2024

21